UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHICAGO FRANCHISE SYSTEMS, INC., | ) |
|     Plaintiff/ Counter Defendant, | ) Case No. 22-cv-2396 |
| v. | ) Judge Sharon Johnson Coleman |
| YVES LESLY DOMINIQUE and DOMINUSDOMI. LLC., | ) |
|     Defendants/ Counter Plaintiffs. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Chicago Franchise Systems, Inc. ("Chicago Franchise") brought this case to enjoin Defendant Yves Lesley Dominique ("Dominique") and, his business, Defendant Dominusdomi, LLC from infringing and diluting its federally registered trademarks and recover damages for Dominique's alleged breach of the parties' Franchise Agreement ("Agreement"). Dominique then filed a four-count counterclaim alleging the following: (a) fraudulent misrepresentation; (b) breach of contract regarding the Agreement's Advertising Fund ("Fund"); (c) breach of contract regarding Chicago Franchise's refusal to certify Dominique's Small Business Administration ("SBA") loan; and (d) a breach of implied contract for Chicago Franchise's failure to certify the SBA loan. Chicago Franchise moves to dismiss Dominique's counterclaim in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Court grants Chicago Franchise's motion to dismiss [53].

**Background**

Chicago Franchise grants licenses and franchises to others to operate Nancy's Pizzeria restaurants. Chicago Franchise is organized under the laws of Illinois and its principal place of business is in Illinois. Dominique is a citizen and resident of Georgia and former franchisee of Nancy's Pizzeria.

On March 21, 2017, Chicago Franchise and Dominique entered into an Agreement.

The Agreement's choice-of-law provision states the following:

"This . . . Agreement shall be governed and construed under and in accordance with the laws of the State of Illinois. The Franchisee irrevocably consents to the exclusive jurisdiction and venue of the Courts of the State of Illinois, County of Cook, and of any Federal court located in the State of Illinois, County of Cook, in connection with *any* action or proceeding *arising out of* or relating to this Standard Franchise Agreement."

The Agreement also contains several provisions granting Chicago Franchise exclusive rights and setting out details concerning the Fund and Chicago Franchise's alleged advertising "obligations." The relevant provisions before the Court are Sections II(G), IV(E), and V(J).

Section II(G) explains Chicago Franchise's exclusive rights to promote and conduct special sales, sell its products in stores and supermarkets, conduct marketing tests, and sell its products to other restaurants or food service providers. Dominique, as a franchisee, is prohibited from engaging in these exclusive rights.

Section IV(E) sets out the details of the advertising fund:

". . . the Franchisee shall also pay the Franchisor a continuing and non-refundable advertising fee in an amount equal to three percent (3%) of the Franchisee's gross sales, [which] . . . shall be deposited into a dedicated "Advertising Fund." The Advertising Fund shall be accounted for separately from other Franchisor funds and shall not be used to defray any Franchisor general operating expenses. . .. A statement of monies collected and costs incurred by the Advertising Fund shall be prepared annually by the Franchisor and shall be furnished to the Franchisee upon written request . . . the Franchisor shall not be obligated to expend any such advertising fees for the benefit of any specific Restaurant or for any specific geographic area; there being, therefore, no assurance that a given Restaurant or Restaurants shall benefit in proportion to its (their) advertising fee contribution. The Franchisee acknowledges and agrees that expenditures by the Advertising Fund may not benefit the Franchisee's Restaurant directly. . .."

Section V(J) provides additional details concerning advertising possibilities:

"…the Franchisee shall from time to time participate in any local or regional advertising and/or promotional campaigns which shall be approved in advance by the Franchisor, and which are subscribed to by a simple majority of other Nancy's Pizza Restaurants located within the market coverage area(s) designated by the Franchisor which shall include the franchised premises. In such event the Franchisee

2

> shall pay a proportional part of the cost and expense of such advertising and/or promotional campaigns based upon either a flat rate per Restaurant, or, alternatively, the ratio that the Franchisee's gross sales from the Restaurant bears to the gross sales generated by all participating Nancy's Pizza Restaurants in such market coverage area(s) for the period of the given advertising and/or promotional campaign."

Dominique failed to immediately invest in complying with the requirements of the Agreement.

On November 30, 2017, David Howey, the President and Secretary of Chicago Franchise, requested that Dominique sign settlement documents and a franchise commitment, which set additional requirements on Dominique to use certain vendors for restaurant renovations and products. These documents also set out other training and assistance restrictions. Dominique alleges that, unknown to him, these vendor, training, and assistance requirements were different than other restaurants. Dominique alleges he signed these documents relying on Howey's statements that Dominique's restaurant would earn $2 million in annual revenue if he followed the requirements. Dominique spent approximately $1.3 million to comply with the Agreement and new requirements.

Because Dominique could not engage in advertising and marketing—since pursuant to Section II(G) Chicago Franchise had the exclusive right to do so—Dominique requested Chicago Franchise's assistance. Dominique alleges that he called Howey on September 9, 2019, and Howey promised he would find help for Dominique's restaurant. However, Chicago Franchise never paid for advertising for Dominique's restaurant's benefit.

Dominique also alleges he never received the Fund's accounting record, as provided in Section IV(E).

Throughout 2021, Dominique alleges he continued to pay royalties and fees, Chicago Franchise updated Dominique's restaurant hours on their website, and Dominique continued to use Chicago Franchise's updated recipes and books. Chicago Franchise alleged in its complaint that on February 26, 2020, it notified Dominique that it was terminating the Agreement. In December 2021

3

Dominique sought Chicago Franchise's signature to certify his restaurant as a Nancy's Pizzeria franchise for an SBA loan. Chicago Franchise withheld its signature, stating it terminated the Agreement.

**Legal Standard**

When considering a Rule 12(b)(6) motion, the Court accepts all the plaintiff's allegations as true and views them in the light most favorable to the plaintiff. *Lavalais v. Vill. Of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). A complaint must contain allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The plaintiff does not need to plead particularized facts, but the allegations in the complaint must be more than speculative. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

**Discussion**

*Choice of law*

To begin, the Court must decide what law applies to Dominique's fraudulent misrepresentation claim. Chicago Franchise argues the Agreement's choice-of-law provision only applies to the terms of the Agreement, and not all claims arising from the agreement; therefore, Dominique's tort claim is governed by Georgia law, as the injury occurred there. Dominique responds that his fraudulent misrepresentation claim is governed by Illinois law, as it arose from the Agreement and occurred in furtherance of the Agreement. According to Dominique, Chicago Franchise's actions and Dominique's claims all arise out of the contract and are governed by its broad choice-of-law provision.

As here, federal courts sitting in diversity must apply the choice-of-law rule of the state in which they sit. *Jackson v. Payday Fin., LLC*, 764 F.3d 765, 774 (7th Cir. 2014) (citing *Wong v. PartyGaming Ltd.*, 589 F.3d 821, 826 (6th Cir. 2009)). Illinois law upholds a choice-of-law provision if

4

the contract is valid, and the law opted does not violate Illinois' public policy. *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 705 (7th Cir. 2004) (citing *Fulcrum Fin. Partners v. Meridian Leasing Corp.*, 230 F.3d 1004, 1011 (7th Cir. 2000)). Because the Agreement's choice-of-law provision abides by Illinois law and the parties do not dispute its validity, it is effective.

The more pertinent issue to focus on is whether the breadth of the clause includes Dominique's fraudulent misrepresentation claim. Courts analyze the scope of a choice-of-law provision in two parts. First, the court examines the language of the provision to determine if the parties' intended for the provision to govern "all claims between them." *Amakua Dev. LLC v. Warner*, 411 F. Supp. 2d 941, 955 (N.D. Ill. 2006) (Filip, J.). That is, "all rights and liabilities arising out of" the agreement. *See id.* Second, the court focuses on whether the tort claims depend on the contract, by examining if "(1) the claim alleges a wrong based on the construction and interpretation of the contract; (2) the tort claim is closely related to the parties' contractual relationship; or (3) the tort claim could not exist without the contract." *Id.*

The Agreement's choice-of-law provision states the "Agreement shall be governed and construed under and in accordance with the laws of the State of Illinois" "in connection with *any* action or proceeding *arising out of* or relating to" the Agreement. The Seventh Circuit has construed "arising out of" language broadly to include disputes whose resolution depends on the construction of the agreement. *See id.* (citing *Medline Indus. Inc., v. Maersk Med. Ltd.,* 230 F.Supp.2d 857, 863 (N.D. Ill. 2020) (Alesia, J.); *Omron Healthcare, Inc. v. Maclaren Exp. Ltd.,* 28 F.3d 600, 603 (7th Cir. 1994) (concluding that the broad term of "arising out of" applied to all disputes where their resolution depended on the construction of the contract)). Because this contract includes "arising out of" language, the Court interprets that broad term in the choice-of-law provision to include tort claims that depend on the Agreement. *See Omron Healthcare,* 28 F.3d at 602. Dominique's fraudulent misrepresentation claim depends on the Agreement because Howey's statements were made to

5

allegedly induce Dominique to sign the settlement documents and franchise commitment. These contracts restricted and controlled the rights and obligations of Dominique pursuant to the Agreement. Therefore, Illinois law applies to all of Dominique's claims.

*Count I: Fraudulent Misrepresentation*

Count I of Dominique's complaint alleges Howey, as Chicago Franchise's President and Secretary, fraudulently misrepresented that Dominique's restaurant would earn $2 million a year if he followed the new requirements pursuant to the settlement document, and other assistance and training provided by Chicago Franchise. Dominique alleges Howey failed to disclose that the assistance and training provided by Chicago Franchise, and vendor restrictions that applied to Dominique's restaurant, were different than those provided or applied to other franchisees.

Chicago Franchise argues Dominique fails to state a claim for fraudulent misrepresentation. To prevail on a fraudulent misrepresentation claim, a plaintiff must establish "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance." *Doe v. Dilling,* 228 Ill.2d 324, 342–43, 888 N.E.2d 24 (2008).

As to the first fraudulent misrepresentation element, Chicago Franchise argues that promise of future revenue is not a basis for false representation under Illinois law. Instead of responding to Chicago Franchise's argument, Dominique counters that omission of information may be a basis for fraudulent misrepresentation. Consequently, Dominique waives his argument regarding the fraudulent representation. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) (explaining that a plaintiff's failure to oppose an argument permits an inference of acquiescence, which "operates as a waiver").

Dominique's contention that omission may establish fraud is not incorrect as an independent theory. To prove fraud by omission of material fact, Dominique must show a special or fiduciary relationship exists between the parties. *Weidner v. Karlin*, 402 Ill. App. 3d 1084, 932 N.E.2d 602 (2010). Unfortunately, Dominique fails to allege that a special or fiduciary relationship existed between the parties. In his response, Dominique forwards a conclusory statement that "Plaintiff was obviously in a position of influence superiority as the franchisor." There is no legal authority for this claim in Dominique's briefing. "Perfunctory and underdeveloped arguments are waived, as are arguments unsupported by legal authority." *See Schaefer v. Universal Scaffolding & Equipment, LLC*, 839 F.3d 599, 607 (7th Cir. 2016).

Since Dominique fails to sufficiently plead the first element of a fraudulent misrepresentation claim, the Court does not need to address the other four set forth by Illinois Supreme Court precedent. The Court grants Chicago Franchise's motion to dismiss, regarding Count I, without prejudice.

*Count II: Breach of Sections II(G), IV(E), and V(J)*

Next, Dominique alleges Chicago Franchise breached Sections II(G), IV(E), and V(J) of the Agreement by failing to perform its alleged advertising obligations. A breach of contract claim under Illinois law requires Dominique to plead the following four elements: (1) the existence of a valid and enforceable contract, (2) Dominique's substantial performance under the contract, (3) Chicago Franchise's breach of that contract, and (4) damages resulting from the alleged breach of contract. *Swyear v. Fare Foods Corp.*, 911 F.3d 874, 886 (7th Cir. 2018). The third element is at issue.

*Section II(G):*

Section II(G) provides exclusive rights to Chicago Franchise, which includes the right to perform marketing tests and engage in advertising practices. Dominique alleges Chicago Franchise breached this provision by not exercising its exclusive right to engage in advertising and marketing.

7

Chicago Franchise argues Dominique fails to allege it breached Section II(G) because the provision does not impose obligations on the franchisor to exercise their exclusive rights. Dominique responds that Chicago Franchise had an obligation of good faith and fair dealing, so he reasonably expected Chicago Franchise to exercise their exclusive rights.

"The obligation of good faith and fair dealing is used as an aid in construing a contract under Illinois law but does not create an independent cause of action." *Page v. Alliant Credit Union*, No. 19-CV-5965, 2020 WL 5076690, at *5 (N.D. Ill. Aug. 26, 2020). However, Dominique must show that the contract memorialized that the defendant had *discretion* to perform an obligation, and the defendant exercised its discretion in bad faith, rather than acting in an opportunistic way to advantage the other party. *See Wilson v. Career Educ. Corp.*, 729 F.3d 665, 675 (7th Cir. 2013) (applying Illinois law) ("[T]he implied covenant of good faith is used as a construction aid to assist the Court in determining whether the manner in which one party exercised its discretion under the contract violated the reasonable expectations of the parties when they entered into the contract.").

Dominique never proclaims that the Agreement memorialized Chicago Franchise with discretion, instead he asserts Chicago Franchise failed to exercise its exclusive rights. Dominique fails to cite to case law or argue that exclusivity is equivalent to discretion. Consequently, he waives this argument. Thus, there is no need for the Court to analyze the parties' additional arguments concerning "illusory promise".

<u>Section V(J)</u>

Section V(J) sets forth the requirement that franchisees must receive approval from Chicago Franchise when engaging in advertising. Dominique alleges Chicago Franchise breached this provision by not participating in advertising that benefited his restaurant. For the same reasons the Court found Dominique did not sufficiently plead Chicago Franchise breached Section II(G), the Court finds that Dominique has not shown that Chicago Franchise breached Section V(J).

*Section IV (E)*

Section IV(E) provides that Chicago Franchise cannot spend Fund money to benefit a specific franchisee. The Agreement did not provide assurance that any given restaurant would benefit directly from its contributions to the Fund. Section IV(E) requires franchisees to pay three percent of their gross sales into the Fund, which must not be used to "defray any Franchisor general operating expenses." Section IV(E) provides that Chicago Franchise will prepare annual Fund accounting reports for cost incurred and money collected by the Fund and furnish these reports to franchisees upon written request. Because Dominique never received these reports, he alleges "upon information and belief" Chicago Franchise defrayed the fund for their operating expenses.

Chicago Franchise argues Dominique fails to allege a breach of Section IV(E) for three reasons. First, Section IV(E) does not require Chicago Franchise to engage in advertising to directly benefit Dominique; instead, it provides that Chicago Franchise may *not* directly benefit specific restaurants. Second, Section IV(E) required Dominique to request the Fund's accounting before Chicago franchise was obligated to provide the records. Third, Dominique's allegation that "on information and belief" that Chicago Franchise used the funds to defray its general operating expenses violated the Agreement is too speculative to plead a breach of contract, as Dominique fails to explain the grounds for his suspicion.

First, Dominique responds that Chicago Franchise has not extended the Fund for his indirect benefit, so, a reasonable jury could conclude Chicago franchise breached the contract. Regardless, as explained above, Dominique does not plead that the Agreement obligated Chicago Franchise to extend its "discretion" to disburse of the Fund for his benefit.

Second, Dominique asserts that Chicago Franchise's contention that any contract requirement for him to request the Fund's annual accounting report to receive it would have been a "useless act." Dominique explains that he asked Howey for support for his restaurant. Still, the

9

facts presented fail to indicate that Dominique specifically asked Howey for the accounting records. General support and a request for accounting records are not equal. Clearly, there must have been some correspondence between the parties since Chicago Franchise informed Dominique of his restaurant's updated hours and sent recipe books and additional instructions. Therefore, Dominique's position that Chicago Franchise did not respond to any of his correspondence contradicts with his complaint.

Lastly, both parties agree that the reliance on pleadings of "information and belief" are insufficient. However, Dominique alleges such pleading is sufficient when the accounting records are inaccessible to him. Dominique is partially correct. Even if facts are inaccessible, Dominique must state the grounds for his suspicion. *See Harrison Wells Partners, LLC v. Chieftain Const. Holdings, Ltd.,* No. 09 C 2445, 2009 WL 3010847, at *3 (N.D. Ill. Sept. 16, 2009) (Kennelly, J.). In *Harrison Wells Partners, LLC*, the court found plaintiff's allegations fell within the "information and belief" exception, since the defendant possessed the information, and the plaintiff identified the evidence that served as a basis to his allegations. *Id.*

The grounds upon which Dominique states his suspicion that Chicago Franchise defrayed the Fund for its operation expenses relies on his allegation that Chicago Franchise failed to satisfy their obligations in providing the accounting records and disbursing of the Funds. Unlike *Harrison Wells Partners, LLC*, as stated above, Dominique does not sufficiently plead these suspicions.

For these three reasons, Dominique has not plead that Chicago Franchise breached Section IV(E) of the contract. Thus, the Court dismisses Count II without prejudice.

*Count III: Breach of Contract*

Dominique alleges that Chicago Franchise frustrated and breached the Agreement by failing to certify the SBA loan. Chicago Franchise argues that Dominique fails to allege that the Agreement required it to certify the loan. Dominique fails to cite to case law to support his argument that a jury

could find in his favor that Chicago Franchise was in the wrong. Specifically, he does not show in lieu of identifying a supporting contractual provision, alleging frustration of purpose may support a breach of contract claim. Therefore, Dominique also fails to allege a breach of contract claim regarding Chicago Franchise's denial to certify the SBA loan. The Court dismisses Count III without prejudice.

*Count IV: Breach of Implied Contract*

Lastly, Dominique contends that under a quasi-contract claim that Chicago Franchise was obligated to confirm his restaurant as a Nancy's Pizzeria franchise to the SBA. Chicago Franchise responds and asserts Dominique cannot allege a quasi-contract existed when the parties had an express contract. Surprisingly, Dominique agrees with Chicago Franchise's argument that the parties had an express contract. However, Dominique asserts Chicago Franchise terminated the agreement on February 26, 2020, therefore no contract would cover the parties' relationships post that date, and the parties still acted as a franchisee and franchisor. Either way, Dominique fails to plead that a quasi-contract requires Chicago Franchise to certify the parties' relationship to the SBA. Therefore, he fails to state Chicago Franchise breached an implied contract. The Court dismisses Count IV without prejudice.

**Conclusion**

For the reasons above, the Court dismisses Dominique's counterclaim without prejudice. Dominique has 30 days to cure these deficiencies.

IT IS SO ORDERED.

Date: 2/23/2024

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge

11